UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DELIA R. SAMS,

    **Plaintiff,**

 v.                     **CASE NO:**

ANGELS CARE HEALTH SYSTEMS

and INNOVATIVE SENIOR MANAGEMENT, L.L.C.,

    **Defendants.**

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, DELIA R. SAMS, (hereinafter "Plaintiff" or "Ms. Sams"), a Florida resident, by and through the undersigned counsel, hereby sues Defendants, ANGELS CARE HEALTH SYSTEMS and INNOVATIVE SENIOR MANAGEMENT, L.L.C. (hereinafter "Defendants," "Angels Care," or "the Company") and alleges:

## INTRODUCTION

1. The Plaintiff brings this action against Defendants, her former employer, seeking to recover damages for unlawful discrimination based on pregnancy and disability, and retaliation, in violation of the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg et seq. ("PWFA"), Title VII of the

Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. ("Title VII") and its implementing Regulations, and the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"). In addition, Plaintiff seeks to redress violations by Defendants of the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA"), and Chapter 760 of the Florida Statutes, the Florida Civil Rights Act of 1992, as amended, § 760.10 et seq. ("FCRA").

2.     As further set forth below, Plaintiff alleges that Defendants unlawfully discriminated against her, altered the terms, conditions, and privileges of her employment because of her pregnancy and disability, failed to provide reasonable accommodations for her pregnancy-related and disability-related limitations, interfered with the exercise of her FMLA rights, and retaliated against her in violation of her rights under the PWFA, Title VII, the ADA, the FMLA, and the FCRA.

3.     As a direct and proximate result of Defendants' unlawful actions, Plaintiff has suffered actual damages: loss of income, loss of opportunity for future income, loss of benefits, and loss of future pay increases. In addition, she has suffered and continues to suffer loss of her

professional and personal reputation, emotional distress, mental anguish, embarrassment, and humiliation.

4.     Plaintiff has incurred costs and attorney's fees in bringing this matter.

### JURISDICTION AND VENUE

5.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a) and the principles of pendent jurisdiction.

6.     This Court has jurisdiction to grant declaratory relief, declare the rights and legal relations of the parties, and order further relief pursuant to 28 U.S.C. §§ 2201 and 2202.

7.     Venue is proper in the United States District Court for the Middle District of Florida, Tampa Division, pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims herein occurred within this District and Division and pursuant to 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices out of which Plaintiff's claims herein arise were committed within this District and Division.

## PARTIES

8.      Plaintiff is DELIA R. SAMS, a 35-year-old female who resides in Land O' Lakes, Florida. During the relevant period, Plaintiff was pregnant and subsequently developed bilateral carpal tunnel syndrome, a condition that substantially limits one or more major life activities.

9.      Plaintiff is a member of a class protected against discrimination and retaliation based on her pregnancy and disability under the PWFA, Title VII, the ADA, and the FCRA.

10.     During the period from August 2022 until on or about January 22, 2026, Defendants employed Plaintiff in various positions, including Regional Operations Nurse, Transition Specialist, Regional Wellness, and Executive Director at Magnolia Gardens.

11.     At all times material herein, Plaintiff met the definitions of "employee" and "eligible employee" under all applicable federal and state statutes.

12.     At all times material herein, Plaintiff was an employee entitled to protection as defined by the PWFA, Title VII, the ADA, the FMLA, and the FCRA.

13.     Defendant, ANGELS CARE HEALTH SYSTEMS, is an assisted

living enterprise that provides seniors with home health care, therapy, pharmaceutical services, adult day care, respite care, and related services, with a principal place of business located at 4801 George Rd, Ste 190, Tampa, FL 33634.

14. Defendant, INNOVATIVE SENIOR MANAGEMENT, L.L.C., is a foreign limited liability company organized under the laws of the State of Delaware and registered to transact business in the State of Florida, which employed Plaintiff in connection with the operation of Defendants' assisted living facilities.

15. At all times material herein, Defendants regularly conducted, and continue to conduct, business throughout the Tampa Bay area, including Hillsborough County and Pinellas County, Florida, and operated assisted living facilities including Magnolia Gardens, The Pointe, Evergreen Manor, Curlew Care, and Hudson Manor, employing fifteen (15) or more employees.

16. At all times material herein, Defendants met, and continue to meet, the definitions of "employer" under all applicable federal and state statutes including, but not limited to, the PWFA, Title VII, the ADA, the FMLA, and the FCRA.

17.     Accordingly, Defendants are liable under the PWFA, Title VII, the ADA, the FMLA, and the FCRA for the unlawful discrimination, failure to accommodate, interference, and retaliation to which they subjected Plaintiff as more fully alleged herein.

## ADMINISTRATIVE PREREQUISITES

18.     Plaintiff has properly exhausted all administrative prerequisites prior to filing the instant lawsuit.

19.     On December 13, 2025, Plaintiff timely dual filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") and the Florida Commission on Human Relations ("FCHR") against Defendants alleging, among other things, discrimination based on sex, pregnancy, and disability, and retaliation (EEOC Charge No. 511-2026-01005).

20.      On July 17, 2026, the EEOC issued Plaintiff a Determination and Notice of Rights (Notice of Right to Sue) in reference to her Charge of Discrimination against Defendants.

21.     This action is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue from the EEOC.

22.      More than one hundred eighty (180) days have elapsed since

the filing of Plaintiff's Charge of Discrimination and the FCHR has not conciliated or determined whether there is reasonable cause. Therefore, Plaintiff is entitled to bring her FCRA claims in the instant civil action against Defendants and jurisdiction is proper in this Court. See §§ 760.11(4)(a) and 760.11(8), Florida Statutes.

23.    All conditions precedent to bringing this action have been performed or have occurred.

## GENERAL ALLEGATIONS

24.    In August 2022, Plaintiff began her employment with Defendants as a Regional Operations Nurse. During her tenure, Plaintiff served in a variety of positions of increasing responsibility, including Transition Specialist, Regional Wellness, and Executive Director at Magnolia Gardens.

25.    Plaintiff's employment involved oversight of multiple assisted living facilities, including Magnolia Gardens, The Pointe, Evergreen Manor, and Curlew Care.

26.    Plaintiff was a salaried exempt employee earning $122,000 annually in base salary plus bonuses, with total compensation of approximately $142,000, including a $2,100 monthly net operating income

("NOI") bonus.

27.    Plaintiff reported primarily to Rachel Jones, Chief Operating Officer and Director of Operations, and ultimately to company owner Alcides Segui.

28.    Throughout her employment, Plaintiff performed her job duties in a satisfactory or above-satisfactory manner. She was never placed on probation and received no reprimands.

29.    On March 12, 2025, when Plaintiff was approximately 16 weeks pregnant with an estimated due date of August 26, 2025, Plaintiff notified her employer of her pregnancy and requested reasonable accommodations for pregnancy-related medical restrictions.

30.    Plaintiff's treating physician, Krista Bennett, APRN, of Orange Blossom Women's Group, documented specific restrictions, including: no lifting over 20 pounds; no pushing more than 20 pounds; no activities requiring balance or coordination; no work hours exceeding 40 hours per week; no standing without a break for more than two hours; and a one-hour mid-day break if working more than eight hours.

31.    On or about March 10, 2025, Plaintiff attended an interactive process meeting at Defendants' facility known as "The Pointe" to discuss her

requested pregnancy accommodations.

32. Despite Defendants' obligation to provide reasonable accommodations for Plaintiff's known pregnancy-related limitations, and despite Plaintiff's ability to remain at The Pointe with the requested restrictions, Defendants responded by transferring Plaintiff to Hudson Manor on March 31, 2025, against her wishes.

33. Plaintiff continued to work diligently throughout her pregnancy despite the inadequate accommodations and adverse treatment. She worked through August 19, 2025, the night before her scheduled cesarean section.

34. On August 15, 2025, Plaintiff provided FMLA paperwork to her employer in advance of her anticipated leave.

35. On August 20, 2025, Plaintiff delivered her child via cesarean section and began her approved twelve-week FMLA leave period, which was scheduled to run through November 12, 2025.

36. During her FMLA leave, Defendants interfered with Plaintiff's FMLA-protected time by repeatedly contacting her and requiring her to address work matters.

37. On August 22, 2025, while Plaintiff was still hospitalized

recovering from surgery two days after delivery, Plaintiff received work-related text messages.

38.     Throughout her leave, Plaintiff was continuously contacted by her supervisor, employees, and vendors and was expected to respond to work communications on a near-daily basis, with only two days during the entire leave period when she was not required to respond.

39.     The work Plaintiff was required to perform during her leave included, among other things: coordinating vendor communications regarding mag lock door repairs at Evergreen Manor; logging into the HFRS system to provide AHCA inspection screenshots at Magnolia Gardens; addressing HVAC-related issues at Defendants' facilities; and calculating NOI bonuses for other employees.

40.     On September 22, 2025, when Plaintiff was only approximately four weeks postpartum, Rachel Jones called Plaintiff and demanded that she return to work before receiving medical clearance, stating, "this is healthcare and things change."

41.     When Plaintiff sought compensation for the substantial work she performed while on leave, Ms. Jones disputed her entitlement to full pay, stated that she "only reached out a few times and did not justify a full check,"

and required Plaintiff, despite her salaried exempt status, to break down the hours she worked. Ms. Jones further stated, "let's be real. You didn't work 86.6 hours," in connection with attempts to prorate Plaintiff's pay.

42.     Plaintiff's paid time off was depleted while she was still performing work, contributing to reduced pay. Plaintiff worked the week of August 15 through 19, 2025, but was paid using paid time off rather than receiving her normal salary.

43.     In early November 2025, Plaintiff received a COBRA notice reflecting a termination effective date of August 1, 2025, dated November 4, 2025. This caused confusion and disruptions with Plaintiff's health insurance coverage, including issues affecting claim processing for pregnancy- and delivery-related medical bills. Defendants later represented that the termination date shown on the COBRA notice was a clerical error associated with adding Plaintiff's newborn to her insurance coverage.

44.     Following her pregnancy and childbirth, Plaintiff developed bilateral carpal tunnel syndrome, with the right side more severely affected than the left. This condition substantially limits one or more major life activities, including working and performing manual tasks.

45.     Plaintiff's condition was documented by her treating physician,

Grace M. Joseph, APRN, of BayCare Health System, who provided detailed medical restrictions, including difficulty using a mouse or keypad, difficulty lifting even five pounds, difficulty gripping, and significant limitations in personal care activities.

46.    Before beginning her maternity and FMLA leave, Plaintiff generally performed her administrative duties remotely three to four days per week and reported in person only one day per week, requiring a commute of approximately fifty minutes each way. On November 12, 2025, when Plaintiff was scheduled to return from FMLA leave, she requested reasonable accommodations under the ADA, including continuing to work from home as an administrator, voice-to-text or voice typing software, bilateral wrist braces, intermittent leave for physical therapy three days per week, and lifting restrictions of no more than five pounds. Plaintiff also submitted appropriate ADA medical documentation requesting disability-related leave through December 24, 2025, because of the limitations caused by her bilateral wrist condition, as certified by her treating physician.

47.    Defendants initially approved leave through December 10, 2025. The original medical documentation stated that Plaintiff required six weeks of leave, but Plaintiff's physician made a clerical calculation error by

listing December 10, rather than December 24, as the end date. When the physician corrected the end date by hand, Defendants rejected the corrected documentation, stating: "For ADA and leave compliance purposes, we are unable to accept any handwritten or altered dates on provider documentation."

48.     On December 8, 2025, Plaintiff's physician provided a new note excusing Plaintiff from work and stating she could return December 24, 2025. Defendants confirmed leave through December 24, 2025, with an expected return date of December 25, 2025, at the Magnolia Gardens location.

49.     Plaintiff also requested an accommodation for a HIPAA-compliant AI assistant to help with her work duties. Defendants denied this accommodation, asserting "undue hardship" and citing alleged costs ranging from $40,000 to $150,000 for setup and $5,000 to $20,000 in annual maintenance.

50.     On December 25, 2025, Plaintiff reported to Magnolia Gardens but brought her infant due to childcare challenges related to her medical limitations. Defendants permitted a one-day exception but made clear that the child could not return, stating that Plaintiff was expected to report to

work without a child present.

51.     On or about January 2, 2026, Plaintiff's physician completed an updated ADA Accommodation Form documenting that Plaintiff remained with severe pain in both wrists, right worse than left, with significant limitation even for her personal care, and that she was unable to lift more than five pounds or type. The physician recommended bilateral wrist braces, voice dictation, lifting restrictions of no more than five pounds, intermittent leave for physical therapy and doctor visits three days per week, working from home as an administrator, and an expected release to work date of February 10, 2026.

52.     On or about January 5, 2026, Defendants partially approved Plaintiff's accommodations, including removal of typing duties, time off for physical therapy, and provision of a computer with dictation functions, but denied remote work and directed Plaintiff to report to Magnolia Gardens in person. Defendants refused to consider continued remote work even though Plaintiff had successfully performed her administrative duties remotely three to four days per week before her leave. Defendants stated that "limitations related to commuting or driving to and from work are not accommodations required under the ADA." Reporting to Magnolia Gardens

would have required Plaintiff to drive approximately one and one-half hours each way, five days per week, for approximately fifteen hours of commuting each week, despite the pain and functional limitations affecting both wrists.

53. On or about January 7, 2026, Defendants transferred Plaintiff to the Curlew Care location, citing concerns regarding commute time, despite Plaintiff's documented driving limitations. Reporting to Curlew Care would have required Plaintiff to drive approximately one hour each way, five days per week, for approximately ten hours of commuting each week. That same day, Plaintiff's physician issued a letter clearing Plaintiff to return to work on February 10, 2026, unless accommodations were provided as described in her ADA paperwork.

54. Throughout this period, Defendants continued to demand that Plaintiff report to various facility locations in person despite her documented medical limitations, her demonstrated ability to perform administrative work remotely, and the substantial increase in required driving. Before leave, Plaintiff commuted approximately fifty minutes each way only one day per week; after leave, Defendants expected her to commute between ten and fifteen hours per week over five days, even

though driving was painful because of her bilateral wrist condition. Defendants also threatened consequences for her inability to report to work on short notice.

55.    Faced with Defendants' continued refusal to provide reasonable accommodations and escalating demands, Plaintiff was constructively discharged and forced to resign on or about January 22, 2026. In her resignation, Plaintiff stated that she was "unable to safely perform the essential in-person duties of my role, even with the accommodations currently in place," and expressly clarified that her resignation was not a voluntary abandonment of her job duties and was not due to misconduct or unwillingness to work.

56.    As a direct result of Defendants' discriminatory conduct, Plaintiff has suffered significant emotional distress. She has been prescribed SSRIs by her primary care provider and has experienced depression and anxiety. She has lost sleep and experienced ongoing stress throughout her leave period and thereafter.

57.    As a direct and proximate result of Defendants' conduct, Plaintiff has suffered damages including lost wages, lost benefits, lost earning capacity, emotional distress, mental anguish, humiliation, and

damage to her professional reputation.

## COUNT I
### Violation of the Pregnant Workers Fairness Act
### Failure to Accommodate
### 42 U.S.C. § 2000gg et seq.

58.     Plaintiff re-alleges paragraphs 1 through 57 as though fully set forth herein.

59.     At all times material, Defendants were a covered entity and employer within the meaning of the PWFA, employing fifteen or more employees.

60.     At all times material, Plaintiff was a qualified employee within the meaning of the PWFA who had known limitations related to pregnancy, childbirth, or related medical conditions.

61.     Plaintiff could perform the essential functions of her position with reasonable accommodation.

62.     Defendants knew of Plaintiff's pregnancy and of her known limitations related to pregnancy and childbirth, including through Plaintiff's notification of her pregnancy on March 12, 2025, the medical documentation provided by her treating physician, and the interactive process meeting held on or about March 10, 2025.

63. The PWFA required Defendants to provide reasonable accommodations to Plaintiff's known limitations related to pregnancy, childbirth, or related medical conditions, unless doing so would impose an undue hardship, and to engage in the interactive process in good faith.

64. Defendants failed to provide reasonable accommodations for Plaintiff's known pregnancy-related limitations. Among other things, rather than accommodating Plaintiff at The Pointe, where she could perform her duties with the requested restrictions, Defendants transferred Plaintiff to Hudson Manor on March 31, 2025, against her wishes.

65. Defendants further failed to provide reasonable accommodations related to Plaintiff's recovery from childbirth and continued to require Plaintiff to perform work during her period of medical leave and recovery.

66. Defendants' actions were taken because of Plaintiff's known limitations related to pregnancy, childbirth, and related medical conditions.

67. As a direct and proximate result of Defendants' violation of the PWFA, Plaintiff has suffered damages, including lost wages, lost benefits, loss of earning capacity, emotional distress, humiliation, mental anguish, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants and requests all relief available under the PWFA, including declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre- and post-judgment interest, attorneys' fees, costs, and such further relief as the Court deems just and proper.

## COUNT II
### Violation of Title VII of the Civil Rights Act of 1964
### Pregnancy Discrimination
### 42 U.S.C. § 2000e et seq.

68.    Plaintiff re-alleges paragraphs 1 through 57 as though fully set forth herein.

69.    At all times material, Defendants were an employer within the meaning of Title VII.

70.    Plaintiff is a member of a protected class under Title VII, as amended by the Pregnancy Discrimination Act, on the basis of her pregnancy, childbirth, and related medical conditions.

71.    Plaintiff was qualified for her position and performed her job satisfactorily.

72.    Defendants discriminated against Plaintiff with respect to the terms, conditions, privileges, and opportunities of employment because of

her pregnancy.

73.     Such discriminatory conduct included, among other things, transferring Plaintiff against her wishes after she disclosed her pregnancy and requested accommodations, refusing to accommodate her pregnancy-related limitations, subjecting her to adverse treatment during her pregnancy and recovery from childbirth, disrupting her health insurance coverage, and ultimately constructively discharging her.

74.     Defendants treated Plaintiff less favorably than similarly situated employees who were not pregnant.

75.     Defendants' conduct was motivated by Plaintiff's pregnancy, and Defendants' proffered explanations for their conduct were false, not worthy of credence, and a pretext for pregnancy discrimination.

76.     As a direct and proximate result of Defendants' pregnancy discrimination, Plaintiff has suffered damages, including lost wages, lost benefits, loss of earning capacity, emotional distress, humiliation, mental anguish, and other compensatory damages.

**WHEREFORE**, Plaintiff demands judgment against Defendants and requests all relief available under Title VII, including declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre-

and post-judgment interest, attorneys' fees, costs, and such further relief as the Court deems just and proper.

## COUNT III
**Violation of Title VII of the Civil Rights Act of 1964
Retaliation
42 U.S.C. § 2000e et seq.**

77. Plaintiff re-alleges paragraphs 1 through 57 as though fully set forth herein.

78. At all times material, Defendants were an employer within the meaning of Title VII.

79. Plaintiff engaged in protected activity under Title VII by, among other things, requesting reasonable accommodations for her pregnancy-related limitations, opposing Defendants' failure to accommodate and adverse treatment related to her pregnancy, and filing a Charge of Discrimination with the EEOC.

80. Defendants knew about Plaintiff's protected activity.

81. After Plaintiff engaged in protected activity, Defendants subjected Plaintiff to materially adverse actions, including transferring her against her wishes, disputing and reducing her compensation, disrupting her health insurance coverage, denying her accommodations, and

constructively discharging her.

82. The timing of Defendants' actions, together with the surrounding facts and Defendants' conduct, supports a causal connection between Plaintiff's protected activity and the materially adverse actions taken against her.

83. Defendants retaliated against Plaintiff because she opposed pregnancy discrimination and exercised rights protected by Title VII.

84. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered damages, including lost wages, lost benefits, loss of earning capacity, emotional distress, mental anguish, humiliation, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendants and requests all relief available under Title VII, including declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre- and post-judgment interest, attorneys' fees, costs, and such further relief as the Court deems just and proper.

## COUNT IV
### Violation of the Americans with Disabilities Act
### Disability Discrimination
### 42 U.S.C. § 12112 et seq.

85.     Plaintiff re-alleges paragraphs 1 through 57 as though fully set forth herein.

86.     At all times material, Defendants were an employer within the meaning of the ADA.

87.     At all times material, Plaintiff was a qualified individual with a disability within the meaning of the ADA.

88.     Plaintiff suffers from bilateral carpal tunnel syndrome, which substantially limits one or more major life activities, including working and performing manual tasks.

89.     At all times material, Plaintiff was qualified to perform the essential functions of her position, with or without reasonable accommodation.

90.     Defendants knew of Plaintiff's disability and her disability-related need for accommodation. Plaintiff requested accommodations on or about November 12, 2025, and submitted supporting medical documentation from her treating physician.

91.     The requested accommodations included working from home as an administrator, voice-to-text or voice dictation software, bilateral wrist braces, intermittent leave for physical therapy, lifting restrictions of no more than five pounds, and disability-related medical leave through December 24, 2025.

92.     Although Defendants later approved limited accommodations, Defendants denied or failed to provide other requested and medically supported accommodations, including remote work that Plaintiff had successfully utilized before her leave and a HIPAA-compliant assistive technology accommodation, and initially rejected corrected medical documentation supporting Plaintiff's need for extended disability-related leave.

93.     Defendants failed to engage in a good-faith interactive process to identify appropriate accommodations and instead continued to demand that Plaintiff report in person to various facility locations five days per week, requiring approximately ten to fifteen hours of weekly driving despite her documented medical limitations and prior successful remote-work arrangement.

94.     Defendants ultimately constructively discharged Plaintiff

because of her disability and because of limitations associated with her disability, rather than providing reasonable accommodation and equal treatment.

95.    As a direct and proximate result of Defendants' disability discrimination, Plaintiff has suffered damages, including lost wages, lost benefits, loss of earning capacity, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendants and requests all relief available under the ADA, including declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre- and post-judgment interest, attorneys' fees, costs, and such further relief as the Court deems just and proper.

**COUNT V**
**Violation of the Americans with Disabilities Act**
**Retaliation**
**42 U.S.C. § 12203**

96.    Plaintiff re-alleges paragraphs 1 through 57 as though fully set forth herein.

97.    At all times material, Defendants were an employer within the meaning of the ADA.

98.    Plaintiff engaged in protected activity under the ADA by, among other things, requesting reasonable accommodations for her disability, submitting medical documentation in support of those requests, complaining about disability-based mistreatment, and filing a Charge of Discrimination with the EEOC.

99.    Defendants knew about Plaintiff's protected activity.

100.    After Plaintiff engaged in protected activity, Defendants subjected Plaintiff to materially adverse actions, including denying her requested accommodations, rejecting her corrected medical documentation, requiring regular in-person reporting and transferring her among facilities despite her documented driving limitations, threatening consequences for her inability to report to work, and constructively discharging her.

101.    There is a causal connection between Plaintiff's protected activity and the materially adverse actions taken against her.

102.    Defendants retaliated against Plaintiff because she requested accommodations and exercised rights protected by the ADA.

103.    As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered damages, including lost wages, lost benefits, loss of earning capacity, emotional distress, mental anguish, humiliation, and other

compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendants and requests all relief available under the ADA, including declaratory relief, back pay, front pay or reinstatement as appropriate, compensatory damages, pre- and post-judgment interest, attorneys' fees, costs, and such further relief as the Court deems just and proper.

**COUNT VI**
**Violation of the Family and Medical Leave Act**
**Interference**
**29 U.S.C. § 2615(a)(1)**

104.   Plaintiff re-alleges paragraphs 1 through 57 as though fully set forth herein.

105.   At all times material, Defendants were an employer within the meaning of the FMLA.

106.   At all times material, Plaintiff was an eligible employee within the meaning of the FMLA.

107.   Plaintiff was entitled to take FMLA leave for childbirth, recovery from childbirth, and related serious health conditions.

108.   Defendants approved Plaintiff's FMLA leave for the period beginning August 20, 2025, and scheduled to run through November 12,

2025.

109. After Plaintiff exercised her FMLA rights, Defendants interfered with, restrained, and denied the exercise of those rights by requiring Plaintiff to perform substantial work duties throughout her leave period.

110. Beginning as early as August 22, 2025, just two days after her cesarean delivery and while she was still hospitalized, Defendants repeatedly contacted Plaintiff regarding work matters and required her to perform substantial job duties, including coordinating vendor communications for facility repairs, logging into company systems to provide state inspection screenshots, addressing HVAC-related issues, and calculating NOI bonuses for other employees.

111. Defendants continued this interference throughout the entirety of Plaintiff's twelve-week leave, with only two days during the entire leave period when Plaintiff was not required to respond to work communications, effectively depriving her of the protected benefit of leave to recover from childbirth.

112. Defendants further pressured Plaintiff to return to work early, disputed her compensation during leave, and improperly depleted her paid

time off while she was simultaneously being required to perform work duties.

113. Defendants' actions interfered with Plaintiff's FMLA rights by depriving Plaintiff of benefits, compensation, and employment conditions she otherwise would have received had she been permitted to take her protected leave free from work obligations.

114. As a direct and proximate result of Defendants' interference with Plaintiff's FMLA rights, Plaintiff has suffered damages, including lost wages, salary, employment benefits, and other compensation, together with interest and other relief available under the FMLA.

115. Defendants' violations were not in good faith, and Plaintiff is therefore entitled to liquidated damages to the fullest extent permitted by law.

WHEREFORE, Plaintiff demands judgment against Defendants and requests all relief available under the FMLA, including damages for lost wages, salary, benefits, and other compensation, interest, liquidated damages, equitable relief including reinstatement or front pay as appropriate, attorneys' fees, costs, and such further relief as the Court deems just and proper.

## COUNT VII
### Violation of the Family and Medical Leave Act
### Retaliation
### 29 U.S.C. § 2615(a)(2)

116. Plaintiff re-alleges paragraphs 1 through 57 as though fully set forth herein.

117. At all times material, Defendants were an employer within the meaning of the FMLA.

118. At all times material, Plaintiff was an eligible employee within the meaning of the FMLA.

119. Plaintiff engaged in protected activity under the FMLA by taking approved FMLA leave beginning August 20, 2025, and by asserting her right to complete her full leave and to be free from work obligations during that leave.

120. Defendants knew Plaintiff engaged in protected activity under the FMLA.

121. After Plaintiff engaged in protected activity, Defendants subjected Plaintiff to adverse employment actions, including pressuring her to return to work early, disputing and reducing her compensation, depleting her paid time off, disrupting her health insurance coverage, threatening her

with consequences for asserting her rights, and constructively discharging her.

122. The timing of Defendants' actions, together with the surrounding circumstances, supports a causal connection between Plaintiff's exercise of FMLA rights and Defendants' retaliatory conduct.

123. Defendants retaliated against Plaintiff because she exercised rights protected by the FMLA.

124. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered damages, including lost wages, salary, employment benefits, and other compensation, together with interest and other relief available under the FMLA.

125. Defendants' violations were not in good faith, and Plaintiff is therefore entitled to liquidated damages to the fullest extent permitted by law.

WHEREFORE, Plaintiff demands judgment against Defendants and requests all relief available under the FMLA, including damages for lost wages, salary, benefits, and other compensation, interest, liquidated damages, equitable relief including reinstatement or front pay as appropriate, attorneys' fees, costs, and such further relief as the Court deems

just and proper.

## COUNT VIII
### Violation of the Florida Civil Rights Act
### Pregnancy Discrimination
### Fla. Stat. § 760.10 et seq.

126.   Plaintiff re-alleges paragraphs 1 through 57 as though fully set forth herein.

127.   At all times material, Defendants were an employer within the meaning of the FCRA.

128.   Plaintiff is a member of a protected class under the FCRA on the basis of her pregnancy.

129.   Plaintiff was qualified for her position and performed her job satisfactorily.

130.   Defendants discriminated against Plaintiff with respect to the compensation, terms, conditions, and privileges of her employment because of her pregnancy, including by transferring her against her wishes after she disclosed her pregnancy and requested accommodations, refusing to accommodate her pregnancy-related limitations, subjecting her to adverse treatment during her pregnancy and recovery from childbirth, disrupting her health insurance coverage, and ultimately constructively discharging

her.

131. Defendants treated Plaintiff less favorably than similarly situated employees who were not pregnant, and Defendants' proffered explanations for their conduct were false, pretextual, and not worthy of credence.

132. All conditions precedent to bringing this action under the FCRA have been satisfied, including the timely filing of an administrative charge and the receipt of all required notices.

133. As a direct and proximate result of Defendants' pregnancy discrimination, Plaintiff has suffered damages, including lost wages, lost benefits, loss of earning capacity, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendants for back pay, front pay or reinstatement, compensatory damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

## COUNT IX
### Violation of the Florida Civil Rights Act
### Disability Discrimination
### Fla. Stat. § 760.10 et seq.

134.   Plaintiff re-alleges paragraphs 1 through 57 as though fully set forth herein.

135.   At all times material, Defendants were an employer within the meaning of the FCRA.

136.   Plaintiff is an individual with a disability, bilateral carpal tunnel syndrome, within the meaning of the FCRA.

137.   At all times material, Plaintiff was qualified to perform the essential functions of her position, with or without reasonable accommodation.

138.   Defendants knew of Plaintiff's disability and her need for accommodation. Plaintiff requested accommodations and provided supporting medical documentation, but Defendants failed to provide all requested and necessary accommodations, including remote work and a HIPAA-compliant assistive technology accommodation, and rejected corrected medical documentation.

139.   Defendants discriminated against Plaintiff because of her

disability by denying or delaying accommodations, failing to engage in a good-faith interactive process, requiring her to report in person despite her documented limitations, and treating her less favorably than employees without her disability.

140.    Defendants ultimately constructively discharged Plaintiff because of her disability and disability-related limitations, rather than providing lawful accommodation and equal treatment.

141.    All conditions precedent to bringing this action under the FCRA have been satisfied, including the timely filing of an administrative charge and the receipt of all required notices.

142.    As a direct and proximate result of Defendants' disability discrimination, Plaintiff has suffered damages, including lost wages, lost benefits, loss of earning capacity, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendants for back pay, front pay or reinstatement, compensatory damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

## COUNT X
**Violation of the Florida Civil Rights Act**
**Retaliation**
**Fla. Stat. § 760.10 et seq.**

143.    Plaintiff re-alleges paragraphs 1 through 57 as though fully set forth herein.

144.    At all times material, Defendants were an employer within the meaning of the FCRA.

145.    Plaintiff engaged in protected activity under the FCRA by requesting reasonable accommodations for her pregnancy-related and disability-related limitations, opposing Defendants' discriminatory treatment, and filing a Charge of Discrimination with the EEOC and the FCHR.

146.    Defendants knew of Plaintiff's protected activity.

147.    After Plaintiff engaged in protected activity, Defendants subjected Plaintiff to materially adverse actions, including transferring her against her wishes, disputing and reducing her compensation, disrupting her health insurance coverage, denying her accommodations, threatening her with consequences for asserting her rights, and constructively discharging her.

148. There is a causal connection between Plaintiff's protected activity and Defendants' materially adverse actions, and Defendants' stated reasons for their actions were false, pretextual, and not the real reasons for their conduct.

149. All conditions precedent to bringing this action under the FCRA have been satisfied, including the timely filing of an administrative charge and the receipt of all required notices.

150. As a direct and proximate result of Defendants' retaliation, Plaintiff has suffered damages, including lost wages, lost benefits, loss of earning capacity, emotional distress, humiliation, mental anguish, and other compensatory damages.

WHEREFORE, Plaintiff demands judgment against Defendants for back pay, front pay or reinstatement, compensatory damages, prejudgment interest, post-judgment interest, taxable costs, reasonable attorneys' fees as permitted by law, and such other relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff respectfully requests a trial by jury.

Dated this 4th day of August 2026.

*/s/ Jason W. Imler, Esq.*

Jason W. Imler
Florida Bar No. 1004422
Alberto "Tito" Gonzalez
Florida Bar No. 1037033
**Imler Law**
23110 State Road 54, Unit 407
Lutz, Florida 33549
(P): 813-553-7709
Jason@ImlerLaw.com
Tito@ImlerLaw.com
Ashley@ImlerLaw.com
Tiffany@ImlerLaw.com